Shippen *v.* Paul.

WILLIAM W. SHIPPEN and others

*v.*

MIFFLIN PAUL and others.

A way for a road or turnpike reserved in a deed for lands, and laid ·down as such on a recorded map of the premises, does not authorize .any company to occupy and use it as a turnpike, without making com- .pensation.

Bill for injunction.    On motion to dissolve.

*Mr. J. S. Applegate,* for the motion.

*Mr. C. Haight, contra.*

THE CHANCELLOR.

The bill is filed for an injunction to restrain the defend-·ants, who claim to be officers of the Highlands and Sea-bright Turnpike Company, from entering upon the lands of the complainants at Seabright, and pulling down and removing fences, outhouses and barns thereon, &c.    The .property in question, which it is the object of this suit to protect, is a strip of land of about ·twenty-eight feet wide, in the rear of the lots of the complainants, on the ocean front of which are their sea-side cottages.    The bill states that the tract of land of which those lots are part, and which contained about seventy acres, was bought by the ·defendant, Mifflin Paul, as agent for William W. Shippen, ·one of the complainants, and Samuel B. Dod ; that Shippen .and Dod paid or secured to be paid all the purchase-money; that Paul took the conveyance in his own name, but executed and delivered to them a declaration of trust; that afterwards, part of the property having been sold, the residue was, by mutual releases or deeds of quitclaim, ·divided between the three, Paul having, by an arrange-ment with Shippen and Dod, obtained an interest therein ;

and that on the making of that division, the declaration of trust was delivered up to Paul; that the deeds by which the partition was made excepted sixty-six feet for a road or turnpike, as laid down on the map hereinafter mentioned; that, to show the interests and evidence the rights of the parties, a map was made and filed in the county clerk's office, on which the road is laid down; that the road does not, on the map, run through the whole property (there appears to be a distance of about two thousand feet in a straight line from its northerly terminus on the map to the northerly line of the tract, the whole length of the tract in a straight line being about five thousand six hundred and fifty feet); that the three, Shippen, Dod and Paul, are owners, in equal shares, of the land reserved for the road; that about a year ago the complainants laid out a large sum of money in improving the road for public use along the rear of their lots; that in 1875 an act was passed incorporating the Highlands and Seabright Turnpike Company; that though there was a pretended organization of the company, there never was a legal one; that though some contributions of money were made, intended for the payment of installments on subscriptions to the stock, no stock was, in fact, legally subscribed, and the company had no legal existence; that though the company pretended to construct its road from the Navesink bridge to the Seabright bridge, it did not, in fact, do so according to the requirements of the charter, and soon abandoned the enterprise, and for three years thereafter took no care of the road; that in the spring of 1879 a pretended re-organization of the company, at the instigation of Paul, was made, but it was merely a pretence, and that he is fraudulently endeavoring, by means of it and the pretence that the complainants have encroached on the turnpike, to compel the complainants to pay him a large sum of money for his own use.

The action complained of is the requirement of the turnpike company that the complainants shall remove, out of the *situs* of the road laid down on the map, fences and

Shippen v. Paul.

buildings placed there by them, which the company insists
are encroachments upon its turnpike, and which it threat-
ens to remove if the complainants do not do so. I do not
deem it necessary to consider the question raised by the bill
as to the organization of the company. Though the com-
pany claims to have constructed its road in 1875, the road
appears never to have been used as a turnpike. · The com-
pany neither shows nor alleges that it has any title what-
ever to the land over which it asserts dominion. It does
not appear to have acquired a right to it in any way. It
does not even set up a grant from Paul. It seems to rely
on acquiescence. The fact that, by the reservation in the
deeds to Shippen and Dod, the land laid down on the map
as a public road is reserved for a public road or turnpike,
would not give to any turnpike company that might see fit
to occupy the land the right to use it for a turnpike without
making compensation.

The answer states that the complainants, or some of
them who owned lots at the time of the first organization
of the turnpike company, encouraged the construction of
the road as a toll and turnpike road, and all acquiesced
in it. The statement is not verified, and it is new matter.

Again, it may be remarked, it appears by the answer
that the design of the company in making the new organ-
ization, and requiring the complainants to remove alleged
encroachments, is not to exercise the franchise of the
company for the benefit of the public, but rather to compel
the complainants to pay a debt which the defendants claim
is a lawful debt of the company due to Paul.

The answer states that the defendants are, equally with
the complainants, desirous of making the road free, but
that they insist that its debts should first be paid; and it
further states that the company, through Paul, in July,
1878, proposed to the complainants that if they would pay
Paul $3,000 on account of the principal of his alleged debt,
not only would he release the debt and interest, but the

company would consent that the road should be a free road, and would relinquish its franchises, which proposition the complainants rejected.

The injunction should be continued until the hearing.